IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LOGAN H.,[1]                                                    Case No. 6:21-cv-01383-JR

　　　　　　　Plaintiff,                              **OPINION AND ORDER**

　　　v.

KILOLO KIJAKAZI, Commissioner of
Social Security,

　　　　　　　Defendant.

**RUSSO, U.S. Magistrate Judge.**

　　　Logan H. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act.  The Court has jurisdiction to hear this

appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C.

§ 405(g).  For the reasons explained below, the Commissioner's decision is affirmed.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.  Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel,* 180 F.3d 1094, 1098 (9th Cir. 1999)).  Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray,* 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.     PLAINTIFF'S APPLICATION

Born in 1983, Plaintiff holds a degree as a pharmacy technician and has past work as a waiter and busser. Tr. 46, 362. Plaintiff filed his application for SSI on October 10, 2019, alleging disability beginning September 17, 2013 due to obesity, chronic generalized abdominal pain, irritable bowel syndrome ("IBS"), chronic prostatitis, interstitial cystitis, pudendal neuralgia, acid reflux disease, fibromyalgia, seizure like activity, generalized anxiety disorder, and recurrent major depressive disorder. Tr. 322-29.

PAGE 2 – OPINION AND ORDER

Plaintiff's claim was denied initially and upon reconsideration. After an administrative hearing held in April 2021, Administrative Law Judge (ALJ) B. Hobbs issued a written opinion denying Plaintiff's claims. Tr. 34-53, 131-57, 183-222. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. This appeal followed.

## II.   THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari,* 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett,* 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante,* 262 F.3d at 954 (citations omitted).

PAGE 3 – OPINION AND ORDER

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine whether Plaintiff was disabled. Tr. 34-53. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date of October 10, 2019. Tr. 39. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: obesity, chronic generalized abdominal pain, IBS, chronic prostatitis, interstitial cystitis, pudendal neuralgia, acid reflux disease, fibromyalgia, seizure like activity, generalized anxiety disorder, and recurrent major depressive disorder. Tr. 39.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a Listing. Tr. 40.

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff retained the ability to perform a range of light work with the following limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, and crawl. He can tolerate no exposure to extreme heat or cold as rated by the Dictionary of Occupational Titles (DOT). He can tolerate no exposure to hazards such as operating heavy machinery or exposure to unprotected heights. He must have access to a bathroom within five minutes travel time from his workstation. Due to side effects of medication and his mental impairments, he can understand, remember, and carry out simple and routine instructions and tasks consistent with the learning and training requirements of Specific Vocational Preparation (SVP) levels one and two type jobs. He can have frequent interactive contact with the public.

Tr. 42.

At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work.  Tr. 46. At step five, the ALJ determined that, given his RFC, Plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 46-47.  The ALJ therefore concluded that Plaintiff was not disabled from his application date of October 10, 2019, through the date of the ALJ's decision. Tr. 47.

PAGE 4 – OPINION AND ORDER

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical opinion of Davina Bledsoe, FNP; (2) improperly rejecting Plaintiff's subjective symptom testimony; and (3) rejecting the lay testimony.

## DISCUSSION

### I.    MEDICAL OPINION EVIDENCE

Plaintiff first argues that the ALJ improperly evaluated the opinion of Davina Bledsoe, FNP. An ALJ's decision to discredit any medical opinion must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id*. at 1012-13 (citing *Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir. 1996)).

Nurse Practitioner ("NP") Bledsoe evaluated Plaintiff in November 2020 for generalized pain, chronic abdominal pain, anxiety, chronic fatigue, fibromyalgia, chronic joint pain, severe depression, seizures, and chronic Epstein Barr Virus ("EBV"). Tr. 749. NP Bledsoe noted that Plaintiff's conditions had progressively worsened over time, and that his symptoms included chronic abdominal pain, chronic joint pain, chronic fatigue, and chronic diarrhea. Tr. 749-50. She also documented Plaintiff's complaints that his medications and treatments, which included

PAGE 5 – OPINION AND ORDER

Duloxetine, Pregabalin, Zonisamide, nerve blocks, and medical marijuana, made him extremely tired, weak, and unable to concentrate. Tr. 751.

Based on her examination, NP Bledsoe opined that Plaintiff needed to lie down and rest periodically throughout the day for thirty minutes to four hours at a time, depending on the severity of his symptoms. Tr. 750. NP Bledsoe further opined that Plaintiff could sit for fifteen minutes at a time and for less than an hour total in an eight-hour workday. Tr. 751. He could stand or walk for just five minutes at a time and for less than an hour total in an eight-hour workday; and required a job that permitted shifting positions at will from sitting, standing, or walking. Tr. 751. NP Bledsoe also opined that Plaintiff would need unscheduled, ten- to fifteen-minute breaks at least four to five times in an eight-hour workday, and that Plaintiff could occasionally lift and carry less than ten pounds, and never more. Tr. 752. She also wrote that Plaintiff would need to periodically elevate his legs during a physical eight-hour period and would be absent more than four workdays per month. Tr. 752.

The ALJ found NP Bledsoe's opinion unpersuasive. Tr. 45-46. She wrote:

> the limitations outlined by the nurse practitioner are inconsistent with examinations which showed no abdominal tenderness, no distention, normal bowel sounds, and no organomegaly, no tenderness to palpation, intact cranial nerve function, adequately aligned spine, normal finger to nose and heel to shin, normal rapid alternating movements, a negative pronator drift, a negative Hoffman's, no Babinski, negative Phalen's and Tinel's bilaterally, with intact sensation and reflexes, and no ankle clonus, as well as alertness, orientation, a friendly, pleasant and cooperative demeanor, normal behavior, casual but appropriate dress with good grooming and hygiene, variable mood and affect, appropriate mentation, normal memory, intact comprehension, intact attention and concentration, clear and spontaneous speech, good eye contact, intact fund of knowledge, with good insight and judgment as well as a normal thought process, with intact thought content.

Plaintiff argues that this was error (1) because the ALJ failed to explain how these findings are relevant to Plaintiff's disabling impairments, and (2) why she found them inconsistent with the limitations NP Bledsoe assessed. The Court disagrees.

Here, the ALJ determined that NP Bledsoe's opinion was inconsistent with other medical examination findings in the record. An ALJ may discount part of a medical opinion when it is inconsistent with the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ noted that Plaintiff's musculoskeletal and neurological examinations generally demonstrated only mild difficulty with mobility, no tenderness to palpation, intact cranial nerve function, symmetric shoulder shrug, stable gait, extremities with normal movement, adequately aligned spine, a negative pronator drift, and intact reflexes. Tr. 449, 469, 477-78, 493, 515, 573, 648, 656, 661, 663-64, 712, 720, 724, 766, 791, 802, 810. This evidence is both relevant to Plaintiff's allegedly disabling limitations and to NP Bledsoe's opinion, because it suggests that Plaintiff's pain was less than disabling and that he could, for example, stand or walk for longer than five minutes at a time, and longer than a single hour per day, in contrast with NP Bledsoe's conclusions. On this record, it was reasonable for the ALJ to infer from the longitudinal medical record that NP Bledsoe's opinion was unpersuasive, because objective medical evidence contradicted her opinion.[2] *Tommasetti*, 533 F.3d at 1041. The ALJ's evaluation of the medical evidence was supported by substantial evidence in the record and is therefore affirmed.

---

[2] While Plaintiff argues that the ALJ failed to analyze the supportability of NP Bledsoe's opinion, 20 C.F.R. §§ 404.1520(c)(1), 416.920(c)(1), an ALJ need not explicitly find that an opinion is both unsupported and inconsistent with the record in order to find it unpersuasive. *Woods*, 32 F.4th 785, 793, n.4 (affirming the ALJ's finding that a medical opinion was unpersuasive because it was inconsistent with the record, despite the ALJ also finding that the opinion was supported).

PAGE 7 – OPINION AND ORDER

## II.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff next argues that the ALJ improperly rejected his subjective symptom testimony. The ALJ is required to provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). At the administrative hearing, Plaintiff testified that he was unable to sustain full-time work primarily due to memory issues, widespread pain, and numbness in his hands, legs, and feet. Tr. 137, 142, 144. He testified that his wife and older children did the household chores, and that he helped his children with their homework and participated in his children's activities when he was able. Tr. 144-45. Plaintiff also testified that pain prevented him from returning to work and that he cried frequently. Tr. 147-48.

The ALJ rejected Plaintiff's testimony to the extent that it conflicted with the RFC. Tr. The ALJ first found that Plaintiff's testimony was unsupported by the medical evidence of record. The ALJ may consider objective medical evidence when assessing a claimant's testimony. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). Here, the ALJ noted that musculoskeletal and neurological examination results generally demonstrated only mild difficulty with mobility, no tenderness to palpation, intact cranial nerve function, symmetric shoulder shrug, stable gait, extremities with normal movement, intact reflexes, and otherwise normal objective findings. Tr. 43-45, 449, 469, 477-78, 493, 515, 573, 648, 656, 661, 663-64, 712, 720, 724, 766, 791, 802, 810. While Plaintiff correctly notes that fibromyalgia is generally unsusceptible to objective testing,[3] the ALJ adduced evidence that tended to contradict Plaintiff's allegations of severe pain, such as stable gait and normal movement, which reasonably indicate an absence of debilitating pain. Tr. 489-90, 508, 514, 573, 661, 677, 712, 720,

_____

[3] See, e.g., *Swales v. Saul*, 852 F. App'x 253, 255-56 (9th Cir. 2021) (noting fibromyalgia's "unique characteristics, including that it is diagnosed based on a patient's self-reported symptoms and that outwardly normal physical examinations are to be expected").

761, 790, 810, 818. In sum, the ALJ properly considered the medical record and rationally concluded that it did not support Plaintiff's allegations of disabling pain. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008). While this evidence is not sufficient to discount Plaintiff's testimony altogether, it does support the ALJ's conclusion that Plaintiff's testimony regarding his chronic, debilitating pain was unpersuasive. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

The ALJ next found Plaintiff's testimony unpersuasive because Plaintiff sought and received only conservative treatment during the relevant period. Tr. 44. A claimant's course of treatment is a valid consideration for assessing the persuasiveness of a claimant's testimony. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Evidence of medical treatment successfully relieving symptoms can undermine a claimant's allegations of disability. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Here, while Plaintiff alleged disability due to pain and mental symptoms, the ALJ acknowledged that Plaintiff "has tried multiple treatment modalities including physical therapy, protonix, zonisamide, nerve relaxers, muscle relaxers, steroids, nerve blocks, topiramate, and marijuana, as well as ketamine, and prescription pain medication," mental health therapy, "duloxetine, . . . Abilify, fluoxeinte, Zoloft, Xanax and Lexapro." Tr. 44-45. In sum, for his physical pain and mental symptoms, Plaintiff's course of treatment included physical and mental health therapy and a wide range of different medications. Tr. 45. Because fibromyalgia is routinely treated only with conservative means, however, this evidence does not reflect poorly on the reliability of Plaintiff's claims. In sum, Plaintiff's treatment record fails to provide additional support for the ALJ's conclusion that Plaintiff was less limited than alleged in his testimony. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Finally, the ALJ discussed Plaintiff's activities as further evidence that his testimony was unpersuasive. Tr. 45. An ALJ may find a claimant's testimony unpersuasive when the claimant's daily activities conflict with his alleged level of impairment. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). Here, Plaintiff retained the ability to "perform adequate self-care, prepare simple meals, do household chores, and go out to the store." Tr. 45. The ALJ also noted that Plaintiff's ability to "engage in exercise including yoga, and spend time Youtubing, as well as coaching basketball . . . indicate a higher level of function than that alleged by the claimant." Tr. 45. Here, Plaintiff's allegations of disabling memory and attention problems, pain with squatting, pushing, and pulling, difficulty bending at the hips, lightheadedness when bending over, and failure to finish things he started, are arguably contradicted by his ability to perform physical activities like yoga and coaching basketball. Tr. 369, 371, 374. Because these activities reasonably indicate a higher level of physical and mental functioning than alleged in his testimony, they provide a clear and convincing reason to discount Plaintiff's allegations of debilitating physical and mental limitations. *Ahearn*, 988 F.3d at 1117. Because the ALJ provided at least one clear and convincing reason in support of his evaluation of Plaintiff's testimony, and that testimony was unsupported by the longitudinal medical record, the ALJ's conclusion is supported by substantial evidence and must be affirmed.

### III.    Lay Testimony of Plaintiff's Wife

Plaintiff argues, finally, that the ALJ erred by rejecting the lay testimony of Plaintiff's wife. Plaintiff's wife reported that Plaintiff was unable to retain information during stressful times and could not focus on multiple things at once. Tr. 369. Plaintiff became frustrated when he could not understand things and was unable to stand or stare at a computer for long periods. Tr. 369. Plaintiff experienced anxiety when too many things were thrown his way and was unable to lift heavy

objects. Tr. 369. Plaintiff's wife also reported that Plaintiff experienced pain with squatting, pushing, and pulling, and myoclonic jerks at night, which interrupted his sleep cycle. Tr. 369, 370. He was sometimes unable to tie his shoes and required reminders to brush his teeth and to eat. Tr. 370-71.

The ALJ considered this testimony but found it unpersuasive. The revised regulations state that the ALJ is "not required to articulate how he consider[s] evidence from nonmedical sources" using the same criteria for medical sources, 20 C.F.R. §§ 404.1520c(d) and 416.920c(d); however, this "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements." *Joseph M. R. v. Comm'r*, No. 3:18-CV-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019). When an ALJ's rationale for discounting a claimant's testimony applies equally to the nonmedical source statements, however, any error in failing to provide adequate reasons to reject the nonmedical source statements is harmless. *Molina*, 674 F.3d at 1117 (the lack of error in articulating a reason to reject lay witness statements was harmless); *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid reasons to reject claimant's testimony also applied to the lay statements). Here, Plaintiff's wife described symptoms that mirrored Plaintiff's own allegations. As discussed above, the ALJ provided legally sufficient reasons for concluding that Plaintiff's testimony was unpersuasive. On this record, any error in rejecting the lay testimony was harmless. *Molina*, 674 F.3d at 1117.

## CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

DATED this 12th day of October, 2022.

 /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

PAGE 11 – OPINION AND ORDER